IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 4:19-CR-56 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | |
| | ) | **DEFENDANT THOMAS BAILEY'S** |
| THOMAS BAILEY, | ) | **MOTION FOR GRAND JURY** |
| | ) | **TRANSCRIPTS** |
| Defendant. | ) | |
| | ) | **ORAL HEARING REQUESTED** |

Defendant Thomas Bailey (hereinafter, "Dr. Bailey"), by and through counsel pursuant to Federal Rule of Criminal Procedure 6(e), hereby moves for an order requiring the Government to produce a copy of the grand jury transcript relating to Counts One and Nine for Dr. Bailey's inspection.  In the alternative, the Court should order the requested records be provided to itself for an *in camera* review.

    **I.**    **PRELIMINARY STATEMENT**

While the defense recognizes that motions requesting an order for grand jury transcripts require considerable justification, this is a unique case in which such motion should be granted. The Government's case against Dr. Bailey involves interpreting a number of very complex, esoteric, and integrated laws and regulations at both the federal and state level.  While the charges brought against Dr. Bailey and other defendants are, at first glance, relatively straight forward, the underlying legal and factual frameworks upon which the Government's case relies are anything but straight forward.  In order to understand the legal ramifications of one's actions within an opioid treatment program (hereinafter, "OTP"), such as Braking Point Recovery Center (hereinafter, "Braking Point") an individual must navigate, analyze, and comprehend several

different statutes at both the federal and state level. This analysis is complicated by the fact that the laws and regulations regarding OTPs are constantly undergoing major changes to address the growing need for access to treatment for opioid addiction. Because of the complex and interconnected nature of the laws and regulations for OTPs, terminology is particularly important when describing all aspects of the treatment process, including when describing the treatment being offered, the setting in which the treatment was offered, and the required licenses for such programs.

The Indictment and related forfeiture complaint[1] contain glaring misstatements of law and numerous instances in which critical terms related to addiction treatment are conflated with one another. These mistakes demonstrate that the Government is confused as to intricacies of the legal framework involved in this case. Such evident confusion on the part of the Government makes it highly probable that the grand jury was misled and presented with confusing instructions and information. These probable errors violated the requirement that the grand jury act independently of the Government and would likely form the basis for a motion to dismiss the counts against Dr. Bailey. For these reasons, this Motion should be granted.

## II. STATEMENT OF FACTS

Dr. Bailey is a physician who worked at Braking Point for approximately eighteen months—from April 2016 until October 2017. Braking Point hired Dr. Bailey to be the intake physician in the subacute detoxification unit of Braking Point's Austintown, Ohio facility. As the intake physician, Dr. Bailey was responsible for performing intake histories and physicals for the subacute detoxification patients and for providing, as needed, emergency medical care for those same patients. Dr. Smith, a DATA-waived physician, was the Medical Director of Braking Point.

---

[1] *United States v. $2,244,772.28, et al.*, No. 4:18-CV-00664-JRA (N.D. Ohio Mar. 22, 2018).

Dr. Bailey would perform a history and physical ("H&P") on a patient, and after completing the H&P, Dr. Bailey would, when medically appropriate, sign a protocol form acknowledging that the patient was medically fit to (a) continue their current protocol of receiving Suboxone, or (b) to begin receiving Suboxone for treatment. It is this simple act—Dr. Bailey's signing of the protocol form while not having a DATA waiver—that forms the crux of the Government's case against Dr. Bailey.[2] The Government contends Dr. Bailey's conduct was done willfully and somehow proves that Dr. Bailey was involved in criminal conspiracies to commit healthcare fraud and drug distribution. Dr. Bailey will show that he had a reasonable belief he did not need a DATA waiver to perform his limited functions at Braking Point, including signing the protocol form. He will demonstrate that his conduct was within the standard of care and medically appropriate and entirely consistent with good faith.

One of the main statutory provisions involved in this case is the Drug Addiction Treatment Act of 2000 (hereinafter, "DATA"), which permits a qualified physician to treat opioid use disorder with Schedule III – V controlled substances once that physician undergoes the required training and obtains a separate DEA registration. This separate registration is known colloquially as a "DATA waiver."[3] Physicians who obtain a DATA waiver are permitted to administer, dispense, and prescribe controlled substances for maintenance and detoxification treatment. *See id.* Only those substances approved by the FDA for maintenance and detoxification treatment may be used as such. One such approved substances is buprenorphine, a Schedule III controlled

---

[2] There were at least four other physicians who performed work at Braking Point and signed similar suboxone protocol forms under similar circumstances while at Braking Point. None of those physicians were charged. The only difference between them and Dr. Bailey, as far as the defense knows, is that those physicians had DATA waivers and Dr. Bailey did not.

[3] It is known as a "waiver" because the training waives the original requirement for a physician to separately register as a Narcotic Treatment Program ("NTP") and adhere to stringent rules and regulations surrounding such programs. *See* 21 U.S.C. § 823(g). NTP and OTP are used interchangeably within the addiction treatment community to describe the same type of facility.

substance. Suboxone is the name of a buprenorphine-based medication used for maintenance and detoxification treatment. Dr. Bailey was registered with federal and state authorities to prescribe Schedule II – V controlled substances. However, he did not have a DATA waiver.

In February 2019, Dr. Bailey and five other individuals were charged in a multi-count indictment. *See* Doc. 1. Dr. Bailey is charged in two counts, which include conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349 (Count 1) and conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846 (Count 9). *See id.*

Underlying both charges is the simple fact that Dr. Bailey did not have a DATA waiver which, according to the Government, he was required to have in order to perform his limited functions at Braking Point. Part of Dr. Bailey's defense is that he reasonably believed, under the circumstances, that he did not need a DATA waiver to perform his circumscribed role of performing H&Ps at Braking Point. This defense will be bolstered, in part, by evidence that the law, regulations, and rules relating to the application of DATA, particularly in in-patient environments such as Braking Point, are highly complex and confusing. It appears, from some of the mistakes in the Indictment and the related forfeiture complaint, that the Government was as unsure as Dr. Bailey as to whether he needed a DATA waiver under these circumstances.

### III. LAW AND ARGUMENT

#### a. Standard of Review

Pursuant to Fed. R. Crim. P. 6(e)(3)(E)(ii), a court may authorize the disclosure of grand jury matters "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). A party seeking disclosure of grand jury materials must demonstrate a "particularized need," by establishing that: (1) the material sought is necessary to avoid possible injustice in another judicial

proceeding; (2) the need for disclosure outweighs the need for secrecy; and (3) the request is narrowly constructed so as to only cover the necessary information. *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 221-22 (1979).

### A. The material sought is necessary to avoid injustice in the criminal proceedings against Dr. Bailey.

The Indictment and related forfeiture complaint contain legally erroneous statements that, when viewed cumulatively, show the Government's lack of understanding regarding the intricate legal framework involved in this case. Where there is sufficient evidence that a grand jury received erroneous instructions that prejudiced the defendant, disclosure of grand jury transcripts is appropriate. *See e.g.*, *United States v. FedEx Corp.*, No. C14-00380 2016 U.S. Dist. LEXIS 6155 (N.D. Cal. Jan. 19, 2016) (ordering government to produce redacted version of grand jury instructions). In this case, there is sufficient evidence that the grand jury received erroneous instructions based on the Government's evident misunderstanding of the factual and legal basis for this case.

For instance, in Paragraph 90 of the Indictment, the Government alleges "Practitioners who sought to provide methadone and buprenorphine to treat individuals addicted to opioids such as heroin, oxycodone, or hydrocodone *must have been certified by SAMHSA to operate as an OBOT program*." Doc. 1 at ¶ 90 (emphasis added). This allegation conflates being certified by Substance Abuse and Mental Health Services Administration (hereinafter, "SAMHSA") as an OTP, with operating an Office-Based Opioid Treatment Program, or an "OBOT." This statement is erroneous because it imposes a legal requirement where one does not exist because, in fact, SAMHSA does not provide certifications for OBOTs – only for OTPs. A practitioner may operate an OBOT if he/she receives a DATA waiver from the DEA, and Dr. Arthur Smith, the medical director of Braking Point, had a DATA waiver. *See generally* 21 U.S.C. § 823(g).

Furthermore, in its related forfeiture complaint, the Government refers to Braking Point as a "Narcotic Treatment Program." *United States v. $2,244,772.28, et al.*, No. 4:18-CV-00664-JRA (N.D. Ohio Mar. 22, 2018).[4] An NTP is defined as "a program engaged in maintenance and/or detoxification treatment with narcotic drugs," and requires a separate registration with the DEA. *See* 21 C.F.R. §1300.01; 21 U.S.C. § 823(g). However, NTP is also a term of art within addiction medicine and carries the connotation that the facility has received the appropriate and necessary certifications from the state and federal level. Notably, it is because of these certifications, that a physician working in an NTP—such as Dr. Bailey—does *not* need to have a DATA waiver to dispense or administer buprenorphine-based products for detoxification and/or maintenance.[5]

Cumulatively, the above misstatements show a high probability the Government was confused as to the complex legal structure underlying the charges in this case. This confusion makes it is highly likely the grand jury was provided erroneous misstatements by the Government, thereby infringing on the grand jury's independence and exposing Dr. Bailey to injustice in his criminal proceeding. For these reasons, the Court should order the grand jury transcripts regarding Counts 1 and 9 be produced to determine if the grand jury was, in fact, erroneously instructed regarding the complex law and regulations governing OBOT, OTPs, and the dispensing of suboxone in in-patient settings for detoxification and maintenance treatment.

    **B.**    <u>**The need for the grand jury transcripts to prevent injustice outweighs the need for secrecy.**</u>

There are several policy reasons behind the secrecy of the grand jury process, including: (1) preventing flight of those who may possibly be indicted; (2) prevent interference with the grand

---

[4] The Indictment characterizes Braking Point as a "an alcohol and drug rehabilitation center[,]" and characterizes the part in which Dr. Bailey worked as the "detox center," or "detoxification program." *See* Doc. 1 at ¶¶ 2, 11, 32.

[5] *See* Certification of Opioid Treatment Programs, samhsa.gov (Sept. 28, 2015) https://www.samhsa.gov/medication-assisted-treatment/opioid-treatment-programs

6

jury; (3) prevent interference with witnesses who may testify in front of the grand jury; (4) encourage witnesses to disclose information; and (5) protect the innocent who are exonerated by the grand jury. *See Douglas Oil*, 441 U.S. at 218 fn 9. Furthermore, "after the grand jury's functions are ended disclosure is *wholly proper where ends of justice require it*." *Socony Vacuum Oil Co.*, 310 U.S. 150, 234 (emphasis added). The policy reasons for secrecy are largely moot in this case because the grand jury has completed its deliberations, and Dr. Bailey has been publicly indicted. And, as stated above, there is sufficient evidence to believe the grand jury process in this case was tainted through the Government's misunderstanding of relevant applicable law, thus, the ends of justice require disclosure of the transcripts.

    **C.**    **The request is tailored so as to only cover the necessary information from the grand jury transcripts.**

There are sixty counts in the Indictment, fifty-eight of which do not apply to Dr. Bailey. Dr. Bailey is not requesting the totality of the grand jury transcripts to be released, or even majority of them; but rather, has focused the request to those transcripts which related to his alleged illegal conduct. And while the majority of the arguments and confusion arise pursuant Count Nine, the two conspiracy counts against Dr. Bailey are so intertwined that it would be unfeasible for the defense to understand the full breadth of the Government's confusion and misstatements to the grand jury as related to the allegations against Dr. Bailey were it just to request the transcripts related to Count Nine.

## CONCLUSION

Where, as here, the Government has demonstrated its confusion regarding the laws and regulations involved in a case, the disclosure of grand jury transcripts is proper. The evident confusion makes it likely that the Government provided confusing or misleading information to the grand jury, including the likely possibility that the grand jury was improperly apprised of the

7

law.  As such, the disclosure of grand jury transcripts is necessary and appropriate in this unique circumstance to avoid injustice against Dr. Bailey in his ongoing criminal proceeding.  For these reasons, and the reasons stated herein, Dr. Bailey requests that his motion be granted, and the Government ordered to produce a copy of the grand jury transcripts either to the defense for its review or, in the alternative, to the Court for an *in camera* review.

        Respectfully submitted,

/s/ *Paul M. Flannery*
Paul M. Flannery (OH: 0091480)
Chris N. Georgalis (OH: 0079433)
**Flannery | Georgalis, LLC**
1375 E. 9th St., 30th Floor
Cleveland, OH 44114
Telephone: (216) 367-2094 (Paul)
Telephone: (216) 367-2095 (Chris)
Email: paul@flannerygeorgalis.com
Email: chris@flannerygeorgalis.com


/s/ *Steven M. Goldberg*
Steven M. Goldberg (0041344)
**GOLDBERG LEGAL CO., LPA**
Solon Business Campus
31300 Solon Rd., Suite 12
Solon, OH 44139
Telephone: (440) 519-9900
Email: steven@goldberglpa.com

*Attorneys for Defendant Dr. Thomas Bailey*

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Paul M. Flannery*
Paul M. Flannery

*Attorney for Defendant Dr. Thomas Bailey*